```
             UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS


TONY B. GASKINS, et al.,
     Plaintiffs,


     v.                              CIVIL ACTION NO.
                                     05-10630-JLT

DAVID NOLAN, et al.
     Defendants.
```

**REPORT AND RECOMMENDATION RE:**
**PLAINTIFFS JOINT MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND FOR PRELIMINARY INJUNCTION (DOCKET ENTRY # 48, CIVIL ACTION**
**NO. 05-11230-JLT); PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING**
**ORDER AND FOR A PRELIMINARY INJUNCTION (DOCKET ENTRY # 14);[1]**
**DEFENDANTS' MOTION TO DISMISS (DOCKET ENTRY # 22); AND**
**DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 36)**

**March 9, 2006**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss (Docket Entry # 22), a motion to dismiss and/or for summary judgment (Docket Entry # 36) and two motions for a temporary restraining order and preliminary injunction (Docket Entry # 14; Docket Entry # 48, Civil Action No. 05-11230-JLT).

PROCEDURAL BACKGROUND

Plaintiffs brought this case as two separate actions in the United States District Court for the District of Massachusetts.

---

[1] Unless otherwise noted, docket entry numbers refer to filings made in the lead case, Civil Action No. 05-10630-JLT.

After ruling on several pretrial motions in each case, the court consolidated the actions and referred the case to this court for pretrial management as well as for recommendations on the above noted motions. (Docket Entry # 35; Docket Entry # 50, Civil Action No. 05-11230-JLT).

I.  **DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (DOCKET ENTRY # 36)**

Factual Background[2]

All plaintiffs in this case are prisoners who were confined in the Massachusetts Correctional Institution, Cedar Junction ("MCI-Cedar Junction" or "the prison") in the Department Disciplinary Unit ("DDU"), an area housing inmates who have violated serious disciplinary rules while in custody. Defendants are seven prison administrators associated with prison law library administration. This case arises out of difficulties plaintiffs experience that are peculiar to their incarceration in the DDU.[3]

---

[2] Facts are taken from the affidavits and the agreed upon facts set forth in the parties' Local Rule 56.1 statements. Citations to the record are provided only for direct quotes. Facts are construed in a light most favorable to the nonmoving parties.

[3] It is worth noting that the DDU has been closed temporarily. Although defendants argue that this temporary closure should merit dismissal, defendants are mistaken. It is black letter law that voluntary cessation of an offending activity will not render a case moot. "[A] defendant's voluntary

2

Although the DDU is located on the property of MCI-Cedar Junction, it is a free standing building independent of the main prison. It has its own law library and legal facilities and also has its own set of rules and regulations. Prior to its closing, the DDU law library contained a smattering of legal books, a typewriter and a copy machine which had been removed as a cost cutting measure prior to the DDU's closing. Now prisoners must submit a form requesting copies, which will then be made at the discretion of the law librarian. Similarly, if DDU prisoners needed cases or other legal material not contained in the DDU law library, they could submit a request form. Upon receipt of such a form, the DDU law librarian would confirm that the material is not available in the DDU law library. If, in fact, the material was not available, the law librarian will obtain the material from the main law library and will either provide copies or originals to the inmate for the inmate's use.

---

cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982). This exception was carved out to prevent offending parties from voluntarily ceasing their offending activity for the purpose of rendering the case moot, only to return to it after the case is dismissed. Id. Defendants have presented no evidence that the closing of the DDU was involuntary. To the contrary, defendants rely on the affidavit of MCI-Cedar Junction's Deputy Superintendent of Operations for Special Management Lisa Mitchell stating that the DDU block was closed voluntarily for safety reasons and that it will be reinstated when those safety concerns are corrected. Once the DDU block is reopened, plaintiffs will be restored to the exact situation that the Supreme Court sought to avoid in fashioning this exception to the mootness doctrine.

One of the other peculiarities of incarceration in the DDU is the prison's policy about pens. As a result of an inmate's assault on two correctional officers with a mutilated hard plastic pen, prison officials removed all hard plastic pens from the DDU and replaced them with "security flex pens." (Docket Entry # 37). These pens are made with flexible rubber tubing, requiring the user to stabilize the pen with his fingers in order to write adequately.

The final significant distinction of DDU life is the prison's policies concerning attorney contact. Inmates are permitted to "earn" telephone calls based on good behavior, up to a maximum of four calls per month. Included in these four telephone calls are attorney telephone calls. Moreover, telephone calls are only permitted between the hours of 9:00 a.m. and 8:30 p.m. The prison does have an emergency provision whereby an attorney can request a telephone call when contact is needed and the attorney is unable to physically visit the prisoner.

The prison's regulations pertaining to visitation are substantially less controlled. Attorneys are allowed an unlimited number of visits and are not restricted as to the amount of time that they can spend with their clients. As an apparent safety measure, the prison requires that all attorney visits be "non-contact" visits, unless special permission for a "contact" visit is requested and is granted by the Superintendent

or one of his designees.  A "non-contact" visit is one where the attorney and inmate are separated by a glass partition and must communicate by using a telephone.  It is not clear from the facts provided whether these discussions are monitored.  It is also unclear whether documents passed between the attorney and the inmate are inspected by prison officials.

## STANDARD OF REVIEW

At the outset it is necessary to determine the appropriate standard of review where defendants have moved for either dismissal and/or summary judgment.  Rule 12, Fed. R. Civ. P. ("Rule 12") states that a court may properly convert a Rule 12(b)(6) motion to dismiss to a Rule 56, Fed. R. Civ. P., motion for summary judgment if all parties have been given a "reasonable opportunity to present all materials" pertinent to a motion for summary judgment.  This essentially requires a court to give notice to the parties prior to converting a motion to dismiss into a motion for summary judgment.  See Puerto-Rican American Co. v. Benjamin Shipping Co., 829 F.2d 281, 285 (1st Cir. 1987) (describing the plaintiffs' argument that notice must be given prior to conversion).  The purpose of this notice requirement is to prevent any "unfair surprise" to the non-moving party.  Id. For this reason, courts have been allowed to convert the motion without notifying the parties when the non-moving party would suffer no "unfair surprise."  See Condon v. Local 2944, United

Steelworkers of America AFL-CIO, CLC, 683 F.2d 590, 593-94 (1st Cir. 1982) (allowing motion for summary judgment without notice where motion titled "motion to dismiss or, in the alternative, for summary judgment," accompanied by lengthy memorandum and affidavit). In this case, a motion for summary judgment would present no unfair surprise to plaintiffs. Here, as in Condon, defendants titled their motion "motion to dismiss or, in the alternative, for summary judgment." Similarly, they provided a supporting memorandum and affidavit. Plaintiffs have also submitted ample affidavits, memoranda and other various supporting evidence. These actions indicate that plaintiffs had constructive notice of the motion for summary judgment, making summary judgment the appropriate standard. See Collier v. City of Chicopee, 158 F.3d 601, 603 (1st Cir. 1998) (noting summary judgment appropriate where non-moving party on "constructive notice" because moving party attached memorandum to motion to dismiss).

The standard of review of a summary judgment motion is well established. Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Poulis-Minott v. Smith, 388 F.3d 354, 362 (1st Cir. 2004) (quoting Rule 56, Fed. R. Civ. P.). All reasonable inferences are drawn in favor of

plaintiffs, the nonmoving parties.  See Williams v. Raytheon Company, 220 F.3d 16, 19 (1st Cir. 2000).

## DISCUSSION

A.  Preliminary Matters

This case involves several claims against several defendants.  All defendants have been sued in both their individual and official capacities.  Plaintiffs allege that an inadequate law library, rigid copy machine policies and substandard pens have impaired their right of access to the courts.[4]  Plaintiffs also allege that DDU policies regarding attorney contact and telephone calls impair their right of access to the courts as well as their right to counsel and their right to freedom of speech.  Plaintiffs sue several prison administrators in both their individual and official capacities for monetary damages stemming from these alleged constitutional violations and also seek to enjoin defendants from continuing their current practices.  At the outset, several of these claims must be dismissed.

---

[4] The district court has ruled on two motions pertaining to the flexible pens, denying plaintiffs' motion for current access to hard plastic pens for filing motions pertaining to this case and denying plaintiffs' motion to present the flexible pens to the court for inspection.  Because both of these motions were narrower than the broad requests for relief in the complaint, this court will, out of an abundance of caution, include the claims pertaining to the flexible pens in this current motion.

First, nowhere have plaintiffs alleged any wrongdoing by defendant Timothy Hall ("Hall").  For this reason, Hall will be dismissed from the case without prejudice.  See Iwachiw v. New York State Dept. of Motor Vehicles, 396 F.3d 525, 528 (2nd Cir. 2005) (affirming lower court's sua sponte dismissal of defendant where no alleged wrongdoing by named defendant); Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993) (disallowing 42 U.S.C. § 1983 claim where no specific allegation of wrongdoing by named defendant).

In addition, plaintiffs seek damages and injunctive relief against all defendants in both their individual and official capacities.  It is well established that a suit versus a state official in his or her official capacity is a suit versus the state itself.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather against the official's office").  It is similarly well established that states are not "persons" within the meaning of 42 U.S.C. § 1983 ("§ 1983").  Id.  Therefore, a state and, by extension, a state actor acting in his or her official capacity cannot be sued for monetary damages under § 1983.[5]  For this

---

[5] Notwithstanding the bar on suits for damages versus officials acting in their official capacity, suits for prospective injunctive relief versus officials acting in their official capacity are permitted.  See Ex Parte Young, 209 U.S. 123, 159-60 (1980) (allowing suits for prospective injunctive relief versus officials acting in their capacity through "fiction

reason, any suit for monetary damages against a state official in his or her official capacity must be dismissed.

B.  Standing in "Access to Courts" Claims

Article III provides the judicial branch with the power to settle only "cases" or "controversies."  Courts comply with this limitation by requiring a plaintiff to have "standing," meaning that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent.'"[6]  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  This requirement presents a fatal problem for plaintiffs.

In this case, the rights in question are the right of access to the courts, the right to counsel and the right to freedom of speech.  See Wolff v. McDonnell, 418 U.S. 539, 575-76 (1974) (questioning whether prison's interference with legal mail implicates right of access to courts, freedom of speech, or right to counsel).  Plaintiffs have difficulty meeting the standing

---

of Young").

[6]  The doctrine of standing also embodies two other requirements which are not at issue in this case:

> [T]here must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . [Finally,] it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan, 504 U.S. at 560-61.

requirement for the first of these rights, access to the courts.

Plaintiffs have incorrectly implied that the right of access to the courts also provides them a right of access to an adequate law library. Although one means of providing prisoners with meaningful access to courts is to provide them with an adequate law library, there is no free standing right to a law library. Lewis v. Casey, 518 U.S. 343, 351 (1996) (describing law libraries as merely a "means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts'"). This difference means that plaintiffs need to show that their access to the courts was impaired by the alleged inadequacies in the law library, rather than merely showing that the library was inadequate. Id. Although a First Circuit decision, Sowell v. Vose, 941 F.2d 32, 34 (1st Cir. 1991), held that actual injury is not always required in "access to courts" cases, that case was decided before the seminal Supreme Court case of Lewis v. Casey, 518 U.S. 343 (1996). The Court in Lewis held that, in access to courts cases, "'meaningful access to the courts is the touchstone,' . . . and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. at 351.

Plaintiffs make several different claims as to how their access to courts is being impaired, but have not once shown any

actual injury resulting from the deficiencies. To the contrary, one plaintiff has specifically stated that he has not yet suffered any injury. Several other plaintiffs have complained that the inadequate library has rendered their legal life more difficult. Still other plaintiffs have not even submitted affidavits. Without any evidence of actual impairment of access to the courts, the claims of denial of right of access to the courts must be dismissed. Specifically, claims stemming from the lack of a copy machine, inadequate pens and lackluster law library must be dismissed.

C. <u>Prison Litigation Reform Act Compliance</u>

Defendants argue that the Prison Litigation Reform Act of 1995, 18 U.S.C. § 3626 ("PLRA"), prohibits the court from granting prospective injunctive relief in this case because "there is no allegation of a current or ongoing violation of the plaintiffs' rights with respect to the DDU library." (Docket Entry # 37). This court need not address this allegation because all claims with respect to the law library usage have already been dismissed.

D. <u>Remaining Claims</u>

The only remaining claims concern the First Amendment right to freedom of speech and the Sixth Amendment right to effective assistance of counsel. Plaintiffs allege that various prison regulations deprive them of these rights. Courts routinely hold that, "Prison walls do not form a barrier separating prison

11

inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 81 (1987). On the other hand, "Running a prison is an inordinately difficult undertaking that requires expertise, planning and the commitment of resources," and prison officials should be afforded appropriate deference. Id. at 85. Balancing these two concerns has led the Supreme Court to develop a reasonable relationship test to determine when a prison regulation impermissibly impinges on the rights of inmates. Id. at 89. The Court has held that, "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id.

To guide later courts, the Supreme Court provided several factors to consider in making this determination. First, is there a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it?" Id. Second, does the prisoner have "alternative means of exercising the right?" Id. at 90. Third, what impact will accommodating the constitutional right have on the rest of the prison population? Id. Finally, the Supreme Court instructs that, "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable

relationship standard." Id. Defendants in this case have more than adequately provided this justification.

Plaintiffs allege that the DDU's requirement that "the attorneys . . . turn over 'privileged communication' materials to guards to give to plaintiffs" violates plaintiffs' First Amendment rights. This allegation is not sufficient to withstand summary judgment. At the outset, it is not even clear that the foregoing amounts to a First Amendment violation. Plaintiffs have not alleged or provided evidence that, for instance, any of the materials were opened or read outside of their presence, which would constitute a violation. See Donovan v. Magnusson, 2005 WL 757585 at * 11 (D.Me. March 11, 2005) (stating prisoner's "First Amendment rights are impacted by the opening of his privileged mail outside his presence"). A mere requirement that attorneys turn materials over to guards will not by itself chill plaintiffs' freedom of speech. Without an allegation that amounts to a constitutional violation, all First Amendment claims must be dismissed.

Moreover, even if this did amount to an infringement of plaintiffs' First Amendment rights, the infringement is valid under the aforementioned Turner factors. First, MCI-Cedar Junction has a legitimate interest in keeping the prison free from contraband, an interest that is rationally related to the inspection of materials passed between prisoners and their guests. Second, prisoners have a ready alternative to passing

information through the guard. Rather than pass materials during the visit, the attorney and prisoner could exchange materials via the mail. Plaintiffs have made no allegation that the mail is not a viable alternative. Third, as stated above, accommodating this particular right could lead to the impermissible introduction of contraband into the prison system, creating problems for both prison officials and the prison population. The presence of these three factors indicates that the inconvenience faced by plaintiffs is outweighed by MCI-Cedar Junction's legitimate interest and, therefore, the regulation is valid.

Plaintiffs allege that they are being denied the effective assistance of counsel in two different ways. They allege that telephone restrictions and "non-contact" visits prohibit them from obtaining effective counsel. Here, again, it is not clear that plaintiffs' allegations amount to a constitutional violation. The Sixth Amendment applies only to representation in criminal trials, so any claims stemming from attorney contact in the civil realm must be dismissed. See <u>Young v. City of Providence ex rel. Napolitano</u>, 404 F.3d 4, 24 (1st Cir. 2005) (recognizing Sixth Amendment does not apply to civil cases and no corresponding right to counsel in civil suits). Moreover, plaintiffs show no evidence that they are completely prohibited from meeting with attorneys, they merely allege that their meetings are not as convenient as they would like. Prisoners are

14

not, however, guaranteed a right to contact visits where, as here, a reasonable justification exists and alternate means (unlimited non-contact visits and limited telephone calls) exist which give plaintiffs the ability to communicate with attorneys. See O'Dell v. Netherland, 112 F.3d 773 (4th Cir. 1997) (finding no Sixth Amendment right to contact visits); Mann v. Reynolds, 46 F.3d 1055, 1060 (10th Cir. 1995) ("the Sixth Amendment does not require in all instances full and unfettered contact between an inmate and counsel"). This right is adequately protected under MCI-Cedar Junction's current scheme. The fact that the prison has also advanced a legitimate safety concern for attorneys as the rationale behind its policy further supports the constitutionality of the policy. See Id. All claims relating to non contact attorney visits must be dismissed.

The final allegation relates to MCI-Cedar Junction's telephone policies. Even assuming that a constitutional violation exists, this restriction can be traced back to legitimate penological interests and a ready alternative to telephone calls exists in the form of mail. See Valdez v. Rosenbaum, 302 F.3d 1039, 1048-49 (9th Cir. 2002) (determining restrictions on prisoners' telephone usage not impermissible based on Turner factors); Simpson v. Gallant, 223 F.Supp.2d 286, 296 (D.Me. 2002) ("[t]he extra delay of relying on the mail to contact [one's] attorney . . . does not make this an unreasonable alternative to the phone"). Although the other two Turner

factors are arguably neutral, these two factors are sufficient for this court to find that this regulation is reasonable and does not amount to a constitutional violation.  All claims arising from telephone restrictions must be dismissed.[7]

II.   MOTIONS FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION (DOCKET ENTRY # 48, CIVIL ACTION NO. 05-11230-JLT; Docket Entry # 14)

For the reasons stated above and having reviewed *all* of plaintiffs' attached evidentiary proffers, see, e.g., Docket Entry # 49, Civil Action No. 05-11230-JLT, there is no likelihood of success on the merits of plaintiffs' case.  Because issuance of a temporary restraining order or preliminary injunction relies on reasonable likelihood of success on the merits, plaintiffs' motion for a temporary restraining order or preliminary injunction must be dismissed.  See Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005) (citing "likelihood of success on the merits" as first of four factors to weigh in determining whether to grant preliminary injunction); New Comm Wireless Services, Inc. v. Sprintcom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) ("[t]he sine qua non of this four-part inquiry is likelihood of success on the merits:  if the moving party

---

[7] This recommendation to allow defendants' motion for summary judgment obviates the need to address the motion to dismiss (Docket Entry # 22) which seeks the same relief.  The motion to dismiss (Docket Entry # 22) is therefore moot.

16

cannot show that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity").

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[8] that defendants' motion for summary judgment (Docket Entry # 36) be **ALLOWED** thereby rendering defendants' motion to dismiss (Docket Entry # 22) **MOOT**.  It is further **RECOMMENDED**[9] that plaintiffs' motions for a temporary restraining order and for a preliminary injunction (Docket Entry # 14; Docket Entry # 48, Civil Action No. 05-11230-JLT) be **DENIED**.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[8] Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  United States v. Escobozo Vega, 678 F.2d 376, 379-79 (1st Cir. 1982); United Stats v. Valencia-Copote, 792 F.2d 4, 6 (1st Cir. 1986).

[9] See the previous footnote.